RECEIVED
MAR 30 2021
RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
Joseph P. KINNEARY U.S. Courthouse
85 Marconi Boulevard
Columbus, Ohio 43215

Mason Harris #185-137
Mansfield Correctional Institution
1150 North Main Street, PO Box 788
Mansfield, Ohio 44901

    Plaintiff-Petitioner,

Ohio Adult Parole Authority, Et. Al.,
4545 Fisher Road
Columbus, Ohio 43228

    Defendants-Respondents,

- And -

Bureau Chief Of The Office Of Quality
Assurance And Improvement - Ohio Dept.
Of Youth Services    P R E A
30 West Spring Street, 5th Floor
Columbus, Ohio 43215

    Defendants-Respondents.

On Appeal From Franklin County Court Of
Common Pleas - Case Number 19CV002949
On Appeal From Court Of Appeals For The Tenth
Appellate District Of Ohio - Franklin County,
Ohio - Case Number 20AP000237
On Appeal From The Supreme Court Of Ohio -
Case Number 21-011
United States District Court For The
Southern District Of Ohio - Eastern Division
- Case Number

2 21CV1401

Judge Morrison

MAGISTRATE JUDGE JOLSON

"PLAINTIFF-PETITIONER'S PRO SE BRIEF"

In the beginning, The Year Of 2016 And Beyond, Plaintiff-Petitioner was and is charging Chillicothe Correctional Institution inmates, Investigator Arledge, it's R.I.B. Panel Members with violations of Plaintiff-Petitioner's Confrontation Clause when they "failed" to permit Chillicothe Correctional Institution inmates especially inmates Vinson and Burns and Investigator Arledge himself to be questioned and testify at the Plaintiff-Petitioner's R.I.B. Hearing after the Plaintiff-Petitioner gave Investigator Arledge pieces of papers of names, dates, times, locations of sexual attacks ("bullying") against Plaintiff-Petitioner. This was for Investigator Arledge Full And Complete Investigation whereby Chillicothe Correctional inmates and surveillance cameras footages should have been given to "T P U ("The Hole") UNIT R.I.B. Panel for review of the sexual attacks ("bullying") against Plaintiff-Petitioner from September Of 2016-To-February Of 2017. The R.I.B. Hearing was heard to Two (2) R.I.B. Panel Members "without" the pieces of papers of suspects names, dates, times, locations of sexual attacks ("bullying") of Plaintiff-Petitioner by inmates and especially inmates Vinson and Burns and Investigator Arledge that began February Of 2017. The R.I.B. Hearing was heard by The Ohio Adult

-1-

Parole Authority in June Of 2018 and the Plaintiff-Petitioner was given Eight (8) Continuous Years Of Imprisonment As A Victim. This is something the Plaintiff-Petititoner strongly feels that he didn't deserve while inmates Vinson and Burns and a host of other Chillicothe Correctional Institution inmates "failed" to be questioned. "They" "failed" to received any prison rule violation nor T P U ("The Hole") Unit Placement for the sexual attacks ("bullying") they did against the Plaintiff-Petitioner nor Investigator Arledge for "obstruction of justice and tampering With Evidences" charges the Plaintiff-Petitioner has brought against him after supposedly conducting a / his full and complete investigation that sent the Plaintiff-Petitioner to the dated February Of 2017 R.I.B. Hearing.

Plaintiff-Petitioner, in February Of 2017 before the R.I.B. Hearing, he gave "them" and Investigator Arledge pieces of paers of names, dates, times, locations when Chillicothe Correctional Institution inmates including inmates Vinson and Burns sexually assaulted ("bullying") Plaintiff-Petitioner witnessed on surveillance cameras footages while the Plaintiff-Petitioner ["Is"] returning to restraining himself from getting into any trouble - a promise Plaintiff-Petitioner gave to himself, to his relatives, to his churchgoing friends and to his families - so that Plaintiff-Petitioner can go before the Ohio Adult Parole Authority And Return Home To "Them."

For all intense purposes, The June Of 2018 Ohio Adult Parole Authority Hearing held with Plaintiff-Petitioner after he carefully explained the above and below listed information to them, the Ohio Adult Parole Authority "failed" to conduct their own full and complete and thorough Chillicothe Correctional Institution surveillance cameras investigation and outcomes when Plaintiff-Petitioner stated to them these informations to each and everyone of them. Plaintiff-Petitioner information to them was straightforward and arose from Investigator Arledge supposedly full and complete investigation which took place in February Of 2017, by which, Plaintiff-Petitioner was given Eight (8) Continuous Years Of Imprisonment.

Plaintiff-Petitioner was "disciplinary" transferred from Chillicothe Correctional Institution-To-Warren Correctional Institution in Lebanon, Ohio in March Of 2017.

Plaintiff-Petitioner was "Approved For A Security Level Decrease" transfer from Warren Correctional Institution-To-London Correctional Institution in London, Ohio in April Of 2019.

Plaintiff-Petitioner was and is charging London Correctional Institution inmates with sexual attacks ("bullying") against him. Investigator Grisler, P R E A Coordinator Eric Morris, Unit Mgr. Hildreth, LOCI R.I.B. Panel for "obstruction of justice" and tampering with evidences" of "CC TV" surveillance cameras recording the sexual attacks ("bullying") of the inamtes and correctional officers against the Plaintiff-Petitioner.

-2-

Crawford v. Metro Gov't of Nashville & Davidson County, 555 U.S. 271
Supreme Court of the United States
October 8, 2008, Argued; January 26, 2009, decided
No. 06-1595

Lawyers' Edition Display

Decision

Employee's conduct in answering questions during employee's investigation of sexual-harassment claim aghainst coworker held protected by 42 U.S.C.S. § 2000e-3(a), where employer assertedly fired responding employee-allegedly for embezzlement-soon after she answered questions.

Summary

Procedural posture: Petitioner employee sued respondent local government, alleging retaliation. The United States Court of Appeals for the Sixth Circuit affirmed a grant of summary judgment in the government's favor, holding that the employee's response to questions by investigators in a pending internal sexual harassment investigation did not violate the opposition clause of 42 U.S.C.S. § 2000e-3(a). Certiorari was granted to resolve a conflict among the circuits.

Overview: The issue was whether the protection afforded by Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e, et.seq, extended to an employee who spoke out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation. The lower court thought that answering questions fell short of opposition, finding that the opposition clause of 42 U.S.C.S. § 2000e-3(a) demanded active, consistent opposing activities to warrant protection against retaliation. Given the use of the word "oppose" in odinary disclosure, there was no reason to doubt that a person could oppose by responding to someone else's question. Moreover, a possibility that an employer might someday want to fire someone who might charge discrimination traceable to an internal investigation was unlikely to diminish the attraction of an Ellerth-Faragher affirmative defense. Thus, the employee's conduct was covered by the opposition clause of 42 U.S.C.S. § 2000e-3(a).

Outcome: The judgment was reversed. The case was remanded for further proceedings. Unanimous decision; 1 concurrence.

Syllabus

[*271] In response to questions from an official of respondent local government (Metro) during an internal investigation into rumors of sexual harassment by the Metro School District employee relations director (Hughes), petitioner Crawford, a 30-year employee, reported that Hughes had sexually harassed her. Metro took no action against Hughes, but soon fired Crawford, alleging embezzlement. She filed suit under Title VII of the Civil Rights Act of 1964, claiming that Metro was retaliating for her report of Hughes's behavior, in violation of 42 U.S.C.§2000e-3(a), which makes it unlawful "for an employer to discriminate against any . . . employee" who (1) has opposed any practice made an unlawful employment practice by this subchapter" (opposition clause), or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (participation clause). The court granted Metro summary judgement, and the Sixth Circuit affirmed, holding that the opposition clause demanded "active, consistent" opposing activities, whereas Crawford had not initiated any complaint prior to the investigation, and finding that the participation clause did not cover Metro's internal investigation because it was not conducted pursuant to a Title VII charge pending with the Equal Opportunity Commission.

\* \* \*

211 Fed.Appx. 373, reversed and remanded.

-3-

Sgt. Knight and correctional officer Smallwood committed sexual attacks ("bullying") against the Plaintiff-Petitioner. These were violations of Plaintiff-Petitioner's Confrontation Clause when they "failed" to be present at Plaintiff-Petitioner's LOCI R.I.B. Hearing. Additionally, 1st and 2nd Shift correctional officers in T P U Unit when the Plaintiff-Petitioner was housed in LOCI area male and females sexually attacked ("bullying") the Plaintiff-Petitioner too. In addition to that, Plaintif-Petitioner gave Investigator Crisler pieces of papers of names, dates, times, locations of sexual attacks ("bullying") by the above listed individuals against the Plaintiff-Petitioner for Investigator Crisler's full and complete investigation whereby LOCI inmates and surveillances cameras footages covering these incidents were "not" called into question.

Plaintiff-Petitioner was "disciplinary" transferred from London Correctional Institution-To-Mansfield Correctional Institution in Mansfield, Ohio where more of the same sexual attacks ("bullying") against the Plaintiff-Petitioner exists. At MANCI, Plaintiff-Petitioner was sexually attacked by a female legal services employee, Mrs. Weidner on two (2) occasions in the legal services area and in her offce. Later, by her correctional officer partner, Mr. Reid amongst other inmates in the legal services area and MANCI itself.

The Plaintiff-Petitioner (Hereinafter Petitioner), he named P R E A Bureau Chief Of The Office Of Quality Assurance And Improvement personnel / unknown as Defendants-Respondents (Hereinafter Respondents). Since the filing of Petitioner's Civil Rights action lawsuit on "April 09, 2019," P R E A Defendants has "failed" to respond to any arguments and litigation from Petitioner's "Pro Se" filings nor their legal attorney.

The "pro se" filings of the Petitioner requests to Franklin County Court Of Common Pleas Judge Jeffrey M. Brown, Tenth Appellate District Judges Nelson, Klatt, Dorrian especially to Asst. Attorney General -George Horvath to ["investigate CCI, LOCI and MANCI surveillance camera footages from the months, days, years, times the Petitioner was sexually attacked ("bullying") by correctional inmates and officers male and female including a legal services female employee seemed relentlessly falling of their deaf ears even to this present date, no nostop torrent of indictments, no plea deals and no legal maneuvering therefrom"]. Petitioner regularly called upon Franklin County Court Of Common Pleas Judge Jeffrey M. Brown to investigate Petitioner's allegations and months, dates, years, times the Petitioner was sexually attacked ("bullying"). Constantly, Franklin County Court Of Common Pleas Judge Jeffrey M. Brown denied "investigating and any wrongdoings on their part," This has been over A Five (5) Year Period And Counting.

-4-

Here's what the state court's and especially Asst. Attorney General-George Horvath has done so far, ["nothing"], and what the Petitioner wants to happen next; investigations and reports to the Columbus Federal Court and Petitioner himself.

QUESTION. Has Asst. Attorney General-George Horvath found anything / everything of what the Petitioner has been talking about for Five (5) Years And counting "untruthful" with any investigation by him handed down to him by the Petitioner during this time period, what about now?

ANSWER. No investigation reports were handed to the state court's from Asst. Attyroney General-George Horvath to the Petitioner during this time period or now. No indictments, no plea deals and no legal maneuvering has been charged with counts in any indictments to influence criminal prosecutions.

QUESTION. Gross Sexual Imposition, Obstruction Of Justice, Tampering With Evidences?

ANSWER. The Columbus Federal Court can separate the charges individually or joint in categories of the inmates and correctional members sexual attacks ("bullying") towards the Petitioner at each Ohio prison. The first includes the indictments of CCI, LOCI and MANCI) inmates and so far MANCI female legal services employee Mrs. Weidner for committing "gross sexual imposition offenses against the Petitioner, committing "obstruction of justice and tampering with evidences at prison-to-prison, either through physical contact and spreading information / misinformation about Petitioner on prison staff telephones, prison staff video conversations, prison emails of accounts of what the Petitioner was and is talking / arguing about. Charges includes outside / offsite state court's prosecution respectfully for "all" Ohio Revised Code violators ("inmates and correctional members"), and such. The Petitioner accuses / charges Asst. Attorney General-George Horv for his "failures" of beginning state prosecutions of the Petitioner's known allegations brought to him.

-5-

GROUNDS FOR RELIEF NO. I

THE TRIAL COURT ERRED WHEN IT PROHIBITED ITSELF FROM VIEWING SURVEILLANCE CAMERA FOOTAGES OF INMATES AND CORRECTIONAL MEMBERS SEXUAL ATTACKS AGAINST THE PLAINTIFF-PETITIONER AT OHIO PRISONS HURTING HIS OPPORTUNITIES FROM ACQUIRING A PAROLE AND RELEASE FROM THE DEFENDANTS-APPELLEES WITHOUT A PRETRIAL AND JURY TRIAL IN VIOLATION OF THE COMPULSORY PROCESS AND DUE PROCESS CLAUSE OF THE UNITED STATES AND OHIO CONSTITUTIONS

The next category consist of people close to Asst. Attorney General-George Horvath - Attorney General David Yost, Columbus, Ohio Federal Bureau Of Investigation ("F.B.I.") all of whom the Petitioner contacted during the Five (5) Year Period And Counting that he did ["Nothing"] so far, whom has run afoul of the law. The Two (2) Of Them ("Franklin County Court Of Common Pleas Judge Jeffrey M. Brown And Asst. Attorney General-George Horvath have kept silent about physically viewing surveillance camera footages of the Petitioner's claimed incidents as "investigators!"

Asst. Attorney General-George Horvath And Ohio Attorney General - David Yost formerly were prosecutors. "They" made inmates in county jails face trials on charges stemming from across the board of Ohio Revised Code and related charges. "They" made inmates in county jails plead guilty to counts and civilians and making statements, and then testify against inmates and civilians, so what about prison inmates and correctional members.

"All" of this information from the Petitioner was given to the Franklin County Court Of Common Pleas Judge Jeffrey M. Brown And Asst. Attorney General - George Horvath during the Petitioner's Civil Rights action lawsuit filed in his Court "April 09, 2019."

QUESTION: Why is Asst. Attorney General-George Horvath being prevented from prosecution? What does that have to do with the Petitioner And His Civil Rights lawsuit?

ANSWER. Please read the above and below listed information. Petitioner's requests for charges against inmates and correctional members related to the Petitioner and the Petitioner's Civil Rights action lawsuit are thes reasons why.
Asst. Attorney General-George Horvath nor his Ohio Attorney General Office ["Never"] began investigating the Petitioner's perpetrators ("inmates and correctional members for the criminal attacks they committed against the Petitioner because of Asst. Attorney General-George Horvath connections with state common pleas and appeals court judges interests, particularly from April Of 2019-To-This Present Date And Counting that he advised the judges in so short of a time to help go against the Petitioner's causes. "By law, Franklin County Court Of Common Pleas Judge Jeffrey M. Brown And Especially Asst. Attorney General-George Horvath ["Never"] reported to the crime scenes ("CCI, LOCI, MANCI for viewship of there surveillance cameras of the months, dates, times, years the Petitioner reported"), such as, "Motion To Visit The Crime scene, by law - it ["never"] was authorized by "them" to investigate "any such matters of the Petitioner's Civil Rights action lawsuit that arose and may arise directly from their investigations."

-6-

The Supreme Court Of Ohio Justices And The Supreme Court Of Ohio - Disciplinary Counsel both in Columbus, Ohio declined ["jurisdiction"] and to acknowledge the Petitioner And His Civil Rights action lawsuit against Defendants-Respondents both Ohio Adult Parole Authority, And, Franklin County Court Of Common Pleas Judge Jeffrey M. Brown , Asst. Attorney General _George Horvath with The Supreme Court Of Ohio - Disciplinary Counsel Overlooking The Matters.

QUESTION: Does Petitioner's Civil Rights action lawsuit against Respondents both of them hAXXX HAS ANYTHING TO DO WITH THE STATEMENTS HEREIN.

ANSWER. It has everything to do with Petitioner's statements. Asst. Attorney General-George Horvath ["Is"] guilty of "Code Of Professional Responsibility Ethics violations and Ohio State Bar Association violations pointing towards citations and The Suprem Court Of Ohio-Disciplinary Counsel violations they will bring about, as well as, Franklin County Court Of Common Pleas Judge Jeffrey M. Brown. Petitioner's Civil Rights action lawsuit strated with Franklin County Court Of Common Pleas Judge Jeffrey M. Brown, and, it was referred to Asst. Attorney General-George Horvath in the Ohio Attorney General in Columbus, Ohio. The charges involve,"Obstruction Of Justice and Tampering With Evidences, and, directly implicate Asst. Attorney General-George Horvath in a criminal scheme. Asst. Attorney General-George Horvath told each state court in hush-hush verbal conversations to go against the Petitioner and Petitioner's Civil Rights action lawsuit to arrange rulings against Petitioner and Petitioner's Civil Rights action lawsuit, violating the law s of the State Of Ohio And Federal Laws as well because Petitioner Civil Rights action lawsuit ["Is Absolutely Truthful"] intended to serve a legal / justice purpose(s).

QUESTION. Does any of the charges against inmates and correctional members at CCI, LOCI and MANCI for the times Petitioner complained, does Petitioner and Petitioner's Civil Rights action lawsuit has anything to do with Franklin County Court Of Common Pleas Judge Jeffrey M. Brown?

ANSWER. Everything does, even though they alleged Franklin County Court Of Common Court Of Common Pleas Judge Jeffrey M. Brown specific acts during Petitioner and Petitioner's Civil Rights action lawsuit has taken Petitioner this far, and to The Supreme Court Of The United States in Washington, D.C. Franklin County Court Of Common Pleas Judge Jeffrey M. Brown has admitted to filing ["Moot"] rulings rather than hold A "PreTrial And Jury Trial" of Petititioner and Petitioner's Civil Rights action lawsuit with ample Petitioner witnesses in favor of Petitioner. His ["Dismissal Posture is his failures to conduct A "PreTrial And Jury Trial" In The Year Of 2020 where it would have begun proceedings of a lot to do with Petitioner and Petitioner's facts, evidences, witnesses, etc., especially signed PETITIONS signatures witnesses. Petitioner carefully explained to Franklin County Court Of Common Pleas Judge Jeffrey M. Brown that Petitioner had / has "criminal charges" he wants to bring against inmates and correctional members, he decided dismissal. Those statements by Petitioner against inmates and correctional members ("bad-seeded correctional members"), because there are bad-seeded correctional members "all" in the Ohio prisons hampering / helping any investigation(s), prosecutors would say "bring them on for court filings.

The involved inmates and correctional members would admit to lying to prison investigating officials about their criminal acts against Petitioner at each Ohio prison even involved correctional members over telephone conversations with prison staff members during Petitioner's Civil Rights action lawsuit filings. During Petitioner's Civil Rights action lawsuit filings, involved inmates and correctional members are urged to ["retaliate against Petitioner and Petitioner's Civil Rights

-7-

action lawsuit to put in place by fellow prison correctional members including staff as punishment against Petitioner and Petitioner's Civil Rights action lawsuit for prison interference"]!!
Any investigation shouldn't be over, and there's no telling what Asst. Attroney General-George Horvath is keeping under wraps and or what he fails to do yet find out from Petitioner and Petitioner's Civil Rights action lawsuit. Although, so far, Asst. Attorney General-George Horvath allies have urged Petitioner's Civil Rights action lawsuit "dismissal" to finish his case; Petitioner hopes the Columbus Federal Court will move at a good clip in the world of complicated prison's investigations concerning Petitioner and Petitioner's Civil Rights action lawsuit.

QUESTION. What is "conspiracy?" It is a crime.
ANSWER. Conspiracy is a legal term, so it's best to use if when dealing with the list of ["law enforcement officials, judicial figures, prison officials with the Petitioner's Civil Rights action lawsuit calls to qustion and investigate inmates and correctional officers sexually attacking Petitioner"]. There has been a disturbing connection between the law enforcement officials, judicial figures, prison officials "not" using their powers between "them," when prosecuting inmates and correctional menebrs in the Petitioner's Civil Rights action lawsuit and the Ohio Revised Code criminal codes. When the Columbus Federal Court helps Petitioner and Petitioner's Civil Rights action lawsuit of "law enforcement, judicial, prison "wrongdoings" involving inmates and correctional members, the likely charge amongst other xharges cited by Petitioner and petitioner's Civil Rights action lawsuit would be "conspiracy." "Conspiracy" charges are generally related to special criminal charges/offenses, such as, a "conspiracy" to commit criminal state and or federal fraud. Such categories of offenses could involve prisons cover-ups violations because it ["Constitutionally illegal to put a prison er through "cruel and unusual punishment, deliberate indifference, personal injury, emotional injury, civil rights violations, etc., when prisons are "negative environments" filled with murderers, pedofiles, rapists, gangs, burglars, robbers, thieves, etc., where at any second any incident can "foul-up" Petitioner's opportunity to receive a "parole and release" from Defendants-Respondents, Ohio Adult Parole Authority preventing Petitioner to go home "alive" to his families, relatives, churchgoing friends"]!

8

GROUNDS FOR RELIEF NO. II

  AST. ATTORNEY GENERAL MISCONDUCT IN THE FORM OF PREVENTING PLAINTIFF-PETITIONER'S MULTIPLE AMOUNT OF WITNESSES FROM HIS PLAINTIFF'S PRO SE WITNESS LIST AND SURVEILLANCE CAMERA FOOTAGES WITNESSES APPEARANCES AT A PRETRIAL AND JURY TRIAL TO PREVENT AN OUTCOME AGAINST THE DEFENDANTS-RESPONDENTS VIOLATED PLAINTIFF-PETITIONER'S RIGHT TO A FAIR TRIAL, COMPULSORY PROCESS, SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION UNDER THE FEDERAL AND OHIO CONSTITUTIONS

  "Pro Se litigants/complaints are held to less stringent standards than drafted by regular lawyers." Haines v. Kerner, 92 S.Ct. 594, 404 U.S. 519, 30 L.Ed. 2d 652. "The Constitutional Amendment ratified with The Bill Of Rights in 1791, guaranteeing The Freedom Of Speech, Religion, Press, Assembly And Petition." First Amendment-Black's Law Dictionary Eighth Edition (1999). "All men are, by nature, free and independent, and have certain inalienable rightys, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obntaining happiness and safety." Ohio Constitution-Article I Section 1 Right To Freedom And Protection Of Property.

  Another offense could be "conspiracy" against The Office Of The Ohio Attorney General-George Horvath in trying to save his job, which is broadly defined as one, two or more employees plotting "either with the office and or against the office to commit any offense to save his or her position, and or any other agency thereof, such as, ( P R E A ) Bureau Chief Of The Office Of Quality Assurance And Improvement-Department Of Youth Services whomin The Year Of 2020," Asst. Attorney General-George Horvath filed in the Franklin County Court Of Common Pleas, Judge Jeffrey M. Brown presiding, explaining that ["P R E A Bureau Chief Of The Office Of Quality Assurance And Improvement shouldn't be a "defendant" in any manner or for any purpose"].

QUESTION.  Even with the "conspiracy" purposes concerning Asst. Attorney General George Horvath did he "obstruct justice," too?

ANSWER.  Since Asst. Attorney General-George Horvath was assigned/authorized to examine, respond to the many issues of the Petitioner and Petitioner's Civil Rights action lawsuit stemming for any investigation into "justice interference," he's also scrutinized by Petitioner and Petitioner's Civil Rights action lawsuit attempts to influence the case against Petitioner. Every since taking the case, Asst. Attorney General-George Horvath has repeatedly control over Franklin County Court Of Common Pleas Judge Jeffrey M. Brown, Tenth Appellate District Judges Nelson, Klatt, Dorrian with fast and quick rulings tht are suspect against Petitioner and Petitioner's Civil Rights action lawsuit towards helping Respondents, both of them, while keeping the other Respondent ("P R E A Bureau Chief Of The Office Of Quality Assurance And Improgvement silent from April 09. 2019-To-This Present Date. The real answer is Asst. Attorney General-George Horvath's actions are legal lines. The Petitioner's repeated argument that, that because he opposes the "justice part of the Office Of The Ohio Attorney General," he does not have the Constitutional Authority to ask the above listed judges for help against Petitioneer nor to tell "them" how to do their jobs.

And, many legal expert professionals agree. Any report from legal expert professional would conclude that a full accounting of Asst. Attorney General George Horvath's actions "strongly supports that he "obstruct justice" SO MANY times in the Petitioner's Civil Rights action lawsuit under ordinary applications of the relevant criminal law violations.

QUESTION. Will Asst. Attorney General-George Horvath sit down for a lengthy interview with Washington, D.C.'s F.B.I., The Justice Department And The United States Department Of The Attorney General?

ANSWER. Asst. Attorney General-George Horvath's personal lawyer or private counsel and any special assistance of counsel for him by the Office Of The Ohio Attorney General has been giving him "assistance" WHILE DANCING AROUND these Petitioner's Civil Rights action alwsuit issues for months, years now. Petitioner had hundreds of witnesses ready for A "Pretrial And Jury Trial" from Petitioner's "PLAINTIFF'S PRO SE WITNESS LIST" with Petitioner ready to use "discovery motions" in the "Pretrial And Jury Trial" WHERE Asst. Attorney General-George Horvath physically and personally went against their appearances. Petitioner has publicly pledged to testify under oath. So far, Asst. Attorney General-George Horvath has ["failed to publicly nor legally pledged to testify under oath in and of any legal proceedings concerning Petitioner's Civil Rights action lawsuit, including Petitioner's scheduled "Pretrial And Jury Trial" in The year Of 2020 collectively!! He collectively resisted meeting with a judge in the court of common pleas area of proceedings about the Petitioner's Civil Rights action lawsuit and Petitioner tried to have him as a witness and face piles of different and separate type of questions the judge and Petitioner could ask him. The Two (2) Sides ["The Petitioner And Asst. Attorney General-George Horvath"], "they" have been arguing back-and-forth over Petitioner's Civil Rights action lawsuit, but "not" in any "Pretrial And Jury Trial" setting(s), and it's clear the Columbus Federal Court can help him reach that decision-making, reaching an agreement.

Petitioner could try to force the issue by issuing a "subpeona" for Asst. Attorney General-George Horvath to testify before A Federal Grand Jury. Such a legal step would almost certainly spark a legal battle within himself that would go to a "State Or Federal Court" for proceedings against him!!

QUESTION. Could Asst. Attorney General-George Horvath be charged with a crime?

ANSWER. From the above and below listed information, it's likely. State and Federal Justice Department Seekers Guidelines stipulate an attorney general and or Asst. Attorney General can be indicted.

Wherefore, Plaintiff-Petitioner, Mason Harris #185-137 Pro Se, he hopes the United States District Court For The Southern District Of Ohio-Franklin County, Ohio Will ["Grant"] His "Plaintiff-Petitioner's Pro Se Brief" while reversing and remanding with instructions to try Plaintiff-Petitioner's Civil Rights action lawsuit with instructions / proceedings of A "Pretrial And Jury Trial" within ninety (90) das in correcting a manifest constitutional error(s), in correcting a manifest miscarriage of justice so that His First, Sixth, Eighth, Fourteenth Constitutional Amendment Rights along with His Ohio Constitution-Article I Section 1 Right To Freedom And Protection Of Property Rights will "not" be violated as deemed necessary in the interests of justice.

DATED: MARCH 18, 2021

Respectfully Submitted, #185-137

Mason Harris #185-137 Pro Se

## CERTIFICATE OF SERVICE

I, the Plaintiff-Petitioner, Mason Harris #185-137 Pro Se, do hereby certify that a true and correct copy of the foregoing "Plaintiff-Petitioner's Pro Se Brief" was sent by regular U.S. Mail to: Asst. Attorney General-George Horvath, 150 East Gay Street, 16th Floor, Columbus, Ohio 43215 this 16th day of MARCH 2021.

_____
Mason Harris #185-137 Pro Se

Sworn to and subscribed before me, in my presence, a Notary Public, State Of Ohio, Richland County, Ohio this 16 day of March 2021.

JASON MICHEL
Notary Public
State of Ohio
My Comm. Expires
November 1, 2025